NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

AAA ALTERNATOR REBUILDERS, INC., Respondent.

No. 92–8266.

United States Court of Appeals, Eleventh Circuit.

Jan. 7, 1993.

---

Aileen Armstrong, Robert Englehart, Collis Suzanne Stocking, N.L.R.B., Washington, D.C., for petitioner.

C. Lash Harrison, Ford & Harrison, Atlanta, Ga., Jeffrey W. Bell, Jack B. Albanese, Atlanta, Ga., for respondent.

Before KRAVITCH, Circuit Judge, GODBOLD and OAKES [*], Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

This case involves a dispute over the certification of a collective bargaining representative for a unit at an employer's new plant location based upon an election conducted at the employer's old plant location at a time when the move to the new location was imminent. The union[1] won the election and was certified as collective bargaining agent. The employer refused to bargain or to furnish information requested by the union. The Board issued a bargaining order. We grant its petition for enforcement.

The facts are straightforward. In June 1990 AAA was engaged in remodeling automobile alternators and starters at a facility in Atlanta, Georgia. During that month the union filed a petition for certification. A representation hearing was conducted. No previous collective bargaining relationship existed between AAA and any union. The Board defined the unit as composed of production, maintenance, warehouse and plant clerical employees, excluding office clericals, guards and supervisors, a total of about 65 of approximately 80 employees.

---

[*] Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

[1] The International Association of Machinists and Aerospace Workers, AFL-CIO.

AAA moved to dismiss the petition on the ground that it would not effectuate the purposes of the National Labor Relations Act, 29 U.S.C. § 151 et seq. (1988), to hold an election because the closing of AAA's existing plant and its move to a new plant were imminent and no offers of employment at the new plant had been made or accepted. The Acting Regional Director found that the company's intended relocation did not render an immediate election inappropriate, denied AAA's motion, and set an election for September 7, 1990. On the day of the election the Board granted AAA's request for review of the order directing the election and ordered the ballots impounded pursuant to 29 C.F.R. § 102.-67(b).

On October 10, a few days after the move to the new location was scheduled to occur, the Board issued a notice to AAA to show cause why the ballots should not be opened and counted and to supply data covering the number of employees at the new facility who had worked at the old facility and the number of new hires. The actual move from Atlanta to the new facility about 18 miles distant occurred November 20.

In January 1991 the Board issued a decision on review of the election order, holding that the ballots should be opened and counted, based on the ground that the employee complement as of the date of the election was substantial and representative of the complement to be employed at the new location. In support of its conclusion the Board recited these specific factual underpinnings drawn from the employer's response and affidavits: all employees at the old location had been offered jobs at the new facility; of 65 eligible to vote in the election 43 continued working at the new location; as of the date of the order 63 persons were working in the bargaining unit found appropriate. Based on these underpinnings and on the record as a whole the Board found the complement as of the date of the election was substantial and representative of the complement to be employed at the new location and ordered that the ballots be counted.

The count showed 35 votes for the union, 28 against and one nondeterminative challenged ballot. Usual steps followed. AAA's objections to the election were overruled. The union was certified. The Board denied AAA's request for review. AAA refused to bargain, and the Board issued an unfair labor practice complaint charging violation of §§ 8(a)(5) and (1) of the Act. In October 1991 the Board granted the General Counsel's motion for summary judgment and ordered AAA to bargain. 305 N.L.R.B. No. 54. It found that all representation issues were or could have been litigated in the prior representation proceeding and that there was no new and previously unavailable evidence. It therefore accepted the Board findings made in its review of the election.

■ Congress has entrusted to the Board the control of election proceedings and the determination of the steps necessary to assure that an election is fairly carried out. *NLRB v. Waterman S.S. Corp.*, 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704 (1940). Accordingly, we review for abuse of discretion the Board's determination of whether and when an election should be held. *NLRB v. Engineers Constructors, Inc.*, 756 F.2d 464, 467 (6th Cir.1985); *NLRB v. Keller Aluminum Chairs S., Inc.*, 425 F.2d 709, 710 (5th Cir.1970).

■ In determining whether a prompt election should be held when a change in the employer's location, and possible changes in the work force, are imminent the Board must balance the objective of insuring maximum employee participation in selecting a bargaining agent against the goal of permitting employees to be represented as quickly as possible, *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 48, 107 S.Ct. 2225, 2238, 96 L.Ed.2d 22 (1987). In striking this balance, it must determine on a case-by-case basis whether the present employment complement is "substantial and representative" of a complement to be employed within the foreseeable future. *See Premium Foods, Inc. v. NLRB*, 709 F.2d 623, 628 (9th Cir.1983); *NLRB v. Pre–Engineered Bldg. Prods.,*

*Inc.,* 603 F.2d 134, 136 & n. 1 (10th Cir., 1979). The composition of the pre-move unit may be altered by the move because some employees/voters may not continue their employment at the new location and there may be new hires who did not vote. But, if the complement at the time of the election is "substantial and representative" of the complement at the post-move location, the election may be treated by the Board as determinative of whether there will be a bargaining representative for the post-move unit.

AAA contends, on two grounds, that the Board should not have conducted the election until after the move to the new location. Its major contention is that the issue of whether the election should be held before the move was controlled by *Cooper International, Inc.,* 205 N.L.R.B. 1057 (1973), and that the Board abused its discretion in neither following *Cooper* nor in distinguishing it. Second, that under the facts a fair election could not be conducted at the old location on the eve of a move.

In *Cooper* the Board held that an order directing an election would not be useful where the employer's transfer of operation was imminent and there was no evidence that the employer had offered, and that a considerable proportion of the employees had indicated that they would accept, employment at the new location. The Board, therefore, dismissed the petition without prejudice to the filing of a new petition, supported by an adequate showing of interest, when the new facility was in operation and a substantial and representative work force was employed there.

According to AAA the linchpin of *Cooper* is that existing employees had not received and accepted offers of employment at the new facility. In *Cooper* the Board stated:

> We shall not attempt to ascertain the probabilities with respect to whether a substantial and representative complement of employees will accept employment at the [new] facility.

205 N.L.R.B. at 1058. And, AAA asserts, at the time of the election in this case none of its current employees had been given offers of employment at the new location.

In his August 8, 1990 order directing the election the Acting Regional Director distinguished *Cooper* on the ground that AAA's employees "fully expect to be employed" at the new location and that AAA, by its actions and words, had created a reasonable expectation of continued employment of the employees at the new location. The subjective expectation of the employees, according to AAA, was not a factor addressed in *Cooper* and not supported by the record in this case. We need not, however, base our decision on subjective expectation.

The history of the "substantial and representative" complement rule is described in *Fall River,* 482 U.S. at 48 n. 15, 107 S.Ct. at 2239 n. 15:

> The "substantial and representative complement" rule originated in the context of the initial representation election when, faced with an expanding or contracting work force, the Board had to determine the appropriate time for an election. See, *e.g., Clement–Blythe Companies,* 182 N.L.R.B. 502 (1970), enf'd, 77 LRRM 2373 (CA4 1971). The rationale for the rule was as follows:
>
> > The Board must often balance what are sometimes conflicting *desiderata,* the insurance of maximum employee participation in the selection of a bargaining agent, and permitting employees who wish to be represented as immediate representation as possible. Thus, it would unduly frustrate existing employees' choice to delay selection of a bargaining representative for months or years until the very last employee is on board. Conversely, it would be pointless to hold an election for very few employees when in a relatively short period the employee complement is expected to multiply many times. 182 N.L.R.B., at 502.

Similar reasoning applies in the successorship context. On the other hand, there is a concern to allow as many employees as possible of the successor to participate in the selection of the union. On the other hand, the previous choice of a union by those employees of the suc-

cessor who had worked for the predecessor should not be frustrated.

At 482 U.S. at 48, 107 S.Ct. at 2238 *Fall River* quotes the frequently-stated purpose of the rule, as set out by the Board in *Pre-Engineered Building Products*, 603 F.2d at 136:

> This rule represents an effort to balance the objective of ensuring that maximum employee participation in the selection of a bargaining agent against the goal of permitting employees to be represented as quickly as possible.

*Fall River* was a successor employer case. But, as noted in its n. 15, quoted above, the Court followed the rule as it had existed in the context of initial representation elections. Earlier *Premium Foods, Inc. v. NLRB*, 709 F.2d 623, 628 (9th Cir. 1983) had followed the same approach of applying to a successor employer case the "substantial and representative" standard drawn from original election cases. While the factors and interests may not be precisely the same in a successorship case as in an initial election case, the "substantial and representative" complement principle is the guiding standard in both situations.

One way for the Board to address the "substantial and representative" complement issue is to make a projection based upon current data, i.e., current data may tell that the pre-move voting complement will be representative of the unit as it will be composed at the new location. In *Cooper* the Board eschewed attempting to make such a projection in advance of the election because of time and insufficient data—the transfer was imminent and there was no evidence showing offers of jobs to employees at the new location or indications of acceptance of such employment. *Cooper* is but an example of the Board's exercise of discretion. It does not establish an exclusive and dispositive means for the exercise of discretion by the Board in implementing its case-by-case approach. It does not exclude methods other than attempting to project what the facts will be at the new location. In a proper case, in implementation of its case-by-case rule, the Board, in the exercise of its discretion

can—as it did here—permit the election to proceed, seal the ballots, and determine after the move that those who voted were substantial and representative of the employees in the unit at the new location, then open the ballots and determine whether a collective bargaining representative has been chosen. In short, it can permit the election subject to conditions subsequent.

We say "in an appropriate case" because under circumstances different from those before us the Board's exercise of discretion might be questioned. For instance, the Board might possess information tending to show that a substantial percentage of the employee force may not go to the new location. The new location might be far distant. The new plant might be more automated, or less automated, and the work force accordingly reduced or increased. Job classifications might be expected to change. The scope and nature of the business might change. There might be a long hiatus between closing the old location and opening the new. No such factors were present in this case.

Arguably, a post-transfer determination such as made here, based upon the revealed facts concerning the composition of the unit at the new location and other relevant facts about the new location, may be more trustworthy than a pre-transfer projection of what the facts will be. In this case AAA's original position was that it would reduce its work force by about 20 because it would be in a larger, more organized and automated building. In fact the size of the unit remained almost exactly the same. Originally AAA represented that it had not offered employment at the new site to its present employees and that they would have to reapply along with other applicants and be screened. As it turned out, all were offered jobs at the new location and there was no "screening." The new location was equipped with machinery from the old location, with the only substantial changes being the addition of material handling equipment. But in this case we need not set out a principle that post-transfer facts are a better basis for conclusions than pre-transfer projections. Rath-

er, we hold that the Board did not abuse its discretion in the methodology it followed to address the "substantial and representative" issue.

AAA's argument that the election was unfair is based upon statistics that it says demonstrate that a minority of employees in the unit at the new location might have determined the representation issue, which is unfair to the majority. The argument runs this way: 55% voted in favor of the union. If it be assumed that of 43 employees who transferred to the new location 55%, or 23, voted for the union, then union representation would be imposed on a unit of 63 by the affirmative vote of only 23. This argument misperceives the "substantial and representative" rule, which is not based upon efforts to determine how employees will vote but rather that old and new units are comparable based upon similarity of work, wages, working conditions, comparative size, continuation of like functions and similar factors.

The Board's petition for enforcement of its order is GRANTED.