**MACMILLAN PUBLISHING CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Union of Needletrades, Industrial and Textile Employees, AFL–CIO, Intervenor.

No. 98–1554.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1999.

Decided Nov. 12, 1999.

Gregory J. Utken argued the cause for petitioner. With him on the briefs was Frank Swain.

Robert J. Englehart, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associ-

ate General Counsel, and Frederick C. Havard, Supervisory Attorney. John D. Burgoyne, Deputy Associate General Counsel, entered an appearance.

Barry A. Macey was on the brief for intervenor.

Before: SILBERMAN, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Macmillan Publishing, Inc. refused to bargain with, or furnish information to, a union that won the second of two representation elections. The company defended against the resulting unfair labor practice charges on the ground that the National Labor Relations Board had improperly certified the union as the employees' bargaining representative. The Board ruled against the company and ordered, among other things, that the company bargain with the union. The company's petition for judicial review followed. The Board then cross-petitioned for enforcement and the union—the Union of Needletrades, In-dustrial and Textile Employees—intervened.

The company is engaged in the wholesale distribution and sale of books and reference materials. It operated two warehouses in Indianapolis, Indiana. The union filed a petition with the Board seeking to represent "all full and regular part-time warehouse and distribution center employees" at the two facilities. The company objected to an election as premature: in six months, it would be transferring its Indianapolis operations to a new "Customer Center" some 17 miles away; no formal offers of employment had yet been made to the current unit employees; additional employees would be hired to work at the new operation. The Regional Director overruled the objection and ordered an election, which the union lost by a vote of 78 to 75. The union filed eight objections. The Regional Director sustained the union's Objection 2 and ordered a new election, without passing on the union's other complaints. The union won the second election by a vote of 58 to 52.

The union's Objection 2 centered on a campaign leaflet the company handed to its employees. The leaflet read:

**WHAT DO YOU HAVE TO LOSE?**

HOW ABOUT:

**$2,522.00 next year!**

| $1.10 per hour<br>× 40 hours per week | $1.25 per hour<br>× 40 hours per week |
|---|---|
| $44.00 per week | $50.00 per week |
| × 13 weeks =<br>$572.00 in Jan - Mar | × 39 weeks =<br>$1,950.00 Apr - Dec |

For a total of $2,522.00 next year

Without a union, Macmillan will be free to proceed ahead with the announced wage increases for the Lebanon move.

With a union, since all wages and benefits would be subject to negotiation, no one can predict what the final wage package would be.

**WHY TAKE THE RISK?**

**VOTE NO!**

The "$2,522.00" referred to an across-the-board wage increase the company had announced two days earlier. (One of the union's objections dealt with the timing of the wage increase.)

■ We may quickly dispatch the company's argument that the first election was premature because of the impending transfer to the Customer Center. As the union rightly points out, the second election (which the union won), not the first (which the union lost) led to the Board's bargaining order. By the time of the second election, the company's move to the new facility had already taken place. Of the employees eligible to vote in the second election, 86% had previously worked in the company's two Indianapolis facilities. The Regional Director's predictive judgment before the first election—that the work force at the old locations would be a substantial and representative complement of the work force at the new location—thus turned out to be accurate. Nothing more is needed to sustain the Board's order insofar as it rested on the results of the second election. *See NLRB v. AAA Alternator Rebuilders, Inc.,* 980 F.2d 1395, 1397–98 (11th Cir.1993).

■ The remaining question is whether the Board, through its Regional Director, properly overturned the first election because of the company's leaflet. For its part the company relies on its free speech right as recognized in § 8(c) of the National Labor Relations Act, 29 U.S.C. § 158(c): "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice ... if such expression contains no threat of reprisal or force or promise of benefit." Section 8(c) does not exactly fit this case. The issue here arose in the context of a representation election and the consequence of the leaflet was not an unfair labor practice charge, but a new election. Nonetheless, the Board admitted at oral argument that its treatment of employer communications at the election stage is indistinguishable from how it decides if an employer's "expression" is outside § 8(c)'s protection because it "contains [a] threat of reprisal or force or promise of benefit."

As to the leaflet, the company insists that it was literally true, and as such did not constitute a threat to employees. We are not sure the last proposition follows from the first. The statement "If you vote for the union, the company will do everything it can to reduce your wages," may be truthful, depending on the company's intentions, but it is certainly a threat. *See NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617–18, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). The leaflet was, so the company tells us, not only truthful but also non-threatening because it did not say the employees would lose their recently-announced pay raise. It said instead that with a union, the employees would risk losing the raise because "all wages and benefits would be subject to negotiation," which is true, whereas without a union the company "will be free to proceed ahead" with the raise, which is also true. *Compare General Elec. Co. v. NLRB,* 117 F.3d 627, 635–36 (D.C.Cir.1997). The Board counters with this argument: the "test" is whether the employer's communication had a "reasonable tendency" to coerce employees; this depends on the particular labor relations setting; here the wage increase announced on the eve of the election heightened employee awareness of their economic dependence on the employer; the Board is expert in assessing the impact; and courts should recognize the Board's wide discretion in such matters. In support, the Board cites many of its decisions and the decisions of federal courts.

■ The trouble is that the Regional Director, whose decision the Board refused

to review, cited none of the authorities the Board relies upon in its brief. Here is the sum and substance of his reasoning:

It is well settled that, during a union organizing campaign, an employer should decide the question of granting or withholding benefits as it would if a union were not in the picture. *Stumpf Motor Company,* 208 NLRB 431 (1974); *The Gates Rubber Company,* 182 NLRB 95 (1970); *The May Department Stores Company d/b/a Famous–Barr Company,* 174 NLRB 770 (1969). Exhibit 1 herein violates this principle by leaving it in the minds of the employees that they will lose the previously announced raise, amounting to $2,522.00 projected over the next year, if the union is voted in. The Employer's mention, later in the document, (in much smaller print) that all wages and benefits are subject to negotiation does not cure the clear implication that the employees will not get their promised raise if the union is voted in. Accordingly, I find that the issuance and distribution of Exhibit 1 by the Employer constitutes objectionable conduct and Petitioner's Objection 2 is sustained.

The Regional Director's first sentence is inscrutable. It deals with the timing of the wage increase. Each of the Board cases cited in support of that sentence dealt with the same subject. *See Stumpf Motor Co.,* 208 N.L.R.B. at 433 (regarding raise announcements, "an employer's legal duty during the pendency of a representation petition 'is to proceed as he would have done had the union not been on the scene' ") (quoting *Gates Rubber Co.,* 182 N.L.R.B. at 95); *May Dep't Stores,* 174 N.L.R.B. at 770 (during election campaign, employer "should decide the question of granting or withholding benefits as he would if a union were not in the picture"). But the often perplexing issues regarding the timing of a raise were not what the Regional Director was addressing. *See Perdue Farms, Inc. v. NLRB,* 144 F.3d 830, 836–37 (D.C.Cir.1998); *id.* at 839–40 (Randolph, J., dissenting). Although the union had interposed an objection on this ground, the Regional Director adjudicated only the union's second objection, which dealt with the alleged threat in Exhibit 1—the leaflet. The Regional Director's second sentence therefore makes no sense. Exhibit 1 could not have violated the "principle" that an employer should act as "if a union were not in the picture." There is no such principle governing employer communications during election campaigns, and we doubt that there could be in light of the First Amendment. *See U.S. Airways, Inc. v. National Mediation Bd.,* 177 F.3d 985 (D.C.Cir.1999). In any event, the Board does not defend the ordering of a new election on such a ground.

Despite the Board's discretion in regulating representation elections, *see Timsco Inc. v. NLRB,* 819 F.2d 1173, 1175–76 (D.C.Cir.1987), we must set aside its order in this case. To borrow from Chief Justice Marshall, an agency's discretionary choices are not left to its "inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Burr,* 25 F.Cas. 30, 35 (C.C.D.Va. 1807) (No. 14,692d). The Regional Director's judgment rested on no sound principle. His rationale was the antithesis of reasoned decisionmaking, and as such was arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Counsel for the Board has offered different reasons to support the ordering of a second election. We express no view on their validity. We cannot sustain agency action on grounds other than those adopted by the agency in the administrative proceedings. *See SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

The petition for judicial review is granted. The cross-petition for enforcement is denied. The case is remanded to the Board for further proceedings.

*So ordered.*