United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 22, 1999 Decided November 12, 1999

 No. 98-1554

 Macmillan Publishing Co., 
 Petitioner

 v.

 National Labor Relations Board, 
 Respondent

 Union of Needletrades, Industrial and 
 Textile Employees, AFL-CIO, 
 Intervenor

 On Petition for Review and Cross-Application for 
 Enforcement of an Order of the 
 National Labor Relations Board

 Gregory J. Utken argued the cause for petitioner. With 
him on the briefs was Frank Swain.

 Robert J. Englehart, Attorney, National Labor Relations 
Board, argued the cause for respondent. With him on the 
brief were Linda Sher, Associate General Counsel, Aileen A. 
Armstrong, Deputy Associate General Counsel, and Frederick 
C. Havard, Supervisory Attorney. John D. Burgoyne, Depu-
ty Associate General Counsel, entered an appearance.

 Barry A. Macey was on the brief for intervenor.

 Before: Silberman, Randolph, and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Randolph.

 Randolph, Circuit Judge: Macmillan Publishing, Inc. re-
fused to bargain with, or furnish information to, a union that 
won the second of two representation elections. The compa-
ny defended against the resulting unfair labor practice 
charges on the ground that the National Labor Relations 
Board had improperly certified the union as the employees' 
bargaining representative. The Board ruled against the com-
pany and ordered, among other things, that the company 
bargain with the union. The company's petition for judicial 
review followed. The Board then cross-petitioned for en-
forcement and the union--the Union of Needletrades, Indus-
trial and Textile Employees--intervened.

 The company is engaged in the wholesale distribution and 
sale of books and reference materials. It operated two 
warehouses in Indianapolis, Indiana. The union filed a peti-
tion with the Board seeking to represent "all full and regular 
part-time warehouse and distribution center employees" at 
the two facilities. The company objected to an election as 
premature: in six months, it would be transferring its India-
napolis operations to a new "Customer Center" some 17 miles 
away; no formal offers of employment had yet been made to 
the current unit employees; additional employees would be 
hired to work at the new operation. The Regional Director 
overruled the objection and ordered an election, which the 
union lost by a vote of 78 to 75. The union filed eight 
objections. The Regional Director sustained the union's Ob-
jection 2 and ordered a new election, without passing on the 

union's other complaints. The union won the second election 
by a vote of 58 to 52.

 The union's Objection 2 centered on a campaign leaflet the 
company handed to its employees. The leaflet read:

 WHAT DO YOU HAVE 
 TO LOSE?

 HOW ABOUT:
 
 $2,522.00 next year!
______________________________________________________________________
 $1.10 per hour $1.25 per hour 
 x 40 hours per week x 40 hours per week 
 _______________________ _______________________
 $44.00 per week $50.00 per week 
 
 x 13 weeks = x 39 weeks = 
 $572.00 in Jan - Mar $1,950.00 Apr - Dec 
______________________________________________________________________
 
 For a total of $2,522.00 next year
 Without a union, Macmillan will be free to proceed ahead with the
announced wage increases for the Lebanon move.
 
 With a union, since all wages and benefits would be subject to 
negotiation, no one can predict what the final wage package would be.
 WHY TAKE THE RISK?

 VOTE NO!
The "$2,522.00" referred to an across-the-board wage in-
crease the company had announced two days earlier. (One of 
the union's objections dealt with the timing of the wage 
increase.)

 We may quickly dispatch the company's argument that the 
first election was premature because of the impending trans-
fer to the Customer Center. As the union rightly points out, 
the second election (which the union won), not the first (which 
the union lost) led to the Board's bargaining order. By the 
time of the second election, the company's move to the new 
facility had already taken place. Of the employees eligible to 
vote in the second election, 86% had previously worked in the 
company's two Indianapolis facilities. The Regional Di-

rector's predictive judgment before the first election--that 
the work force at the old locations would be a substantial and 
representative complement of the work force at the new 
location--thus turned out to be accurate. Nothing more is 
needed to sustain the Board's order insofar as it rested on the 
results of the second election. See NLRB v. AAA Alternator 
Rebuilders, Inc., 980 F.2d 1395, 1397-98 (11th Cir. 1993).

 The remaining question is whether the Board, through its 
Regional Director, properly overturned the first election be-
cause of the company's leaflet. For its part the company 
relies on its free speech right as recognized in s 8(c) of the 
National Labor Relations Act, 29 U.S.C. s 158(c): "The ex-
pressing of any views, argument, or opinion, or the dissemina-
tion thereof, whether in written, printed, graphic, or visual 
form, shall not constitute or be evidence of an unfair labor 
practice ... if such expression contains no threat of reprisal 
or force or promise of benefit." Section 8(c) does not exactly 
fit this case. The issue here arose in the context of a 
representation election and the consequence of the leaflet was 
not an unfair labor practice charge, but a new election. 
Nonetheless, the Board admitted at oral argument that its 
treatment of employer communications at the election stage is 
indistinguishable from how it decides if an employer's "ex-
pression" is outside s 8(c)'s protection because it "contains [a] 
threat of reprisal or force or promise of benefit."

 As to the leaflet, the company insists that it was literally 
true, and as such did not constitute a threat to employees. We 
are not sure the last proposition follows from the first. The 
statement "If you vote for the union, the company will do 
everything it can to reduce your wages," may be truthful, 
depending on the company's intentions, but it is certainly a 
threat. See NLRB v. Gissel Packing Co., 395 U.S. 575, 617-
18 (1969). The leaflet was, so the company tells us, not only 
truthful but also non-threatening because it did not say the 
employees would lose their recently-announced pay raise. It 
said instead that with a union, the employees would risk 
losing the raise because "all wages and benefits would be 
subject to negotiation," which is true, whereas without a 

union the company "will be free to proceed ahead" with the 
raise, which is also true. Compare General Elec. Co. v. 
NLRB, 117 F.3d 627, 635-36 (D.C. Cir. 1997). The Board 
counters with this argument: the "test" is whether the em-
ployer's communication had a "reasonable tendency" to 
coerce employees; this depends on the particular labor rela-
tions setting; here the wage increase announced on the eve of 
the election heightened employee awareness of their economic 
dependence on the employer; the Board is expert in assess-
ing the impact; and courts should recognize the Board's wide 
discretion in such matters. In support, the Board cites many 
of its decisions and the decisions of federal courts.

 The trouble is that the Regional Director, whose decision 
the Board refused to review, cited none of the authorities the 
Board relies upon in its brief. Here is the sum and substance 
of his reasoning:

 It is well settled that, during a union organizing cam-
 paign, an employer should decide the question of grant-
 ing or withholding benefits as it would if a union were 
 not in the picture. Stumpf Motor Company, 208 NLRB 
 431 (1974); The Gates Rubber Company, 182 NLRB 95 
 (1970); The May Department Stores Company d/b/a 
 Famous-Barr Company, 174 NLRB 770 (1969). Exhibit 
 1 herein violates this principle by leaving it in the minds 
 of the employees that they will lose the previously an-
 nounced raise, amounting to $2,522.00 projected over the 
 next year, if the union is voted in. The Employer's 
 mention, later in the document, (in much smaller print) 
 that all wages and benefits are subject to negotiation 
 does not cure the clear implication that the employees 
 will not get their promised raise if the union is voted in. 
 Accordingly, I find that the issuance and distribution of 
 Exhibit 1 by the Employer constitutes objectionable con-
 duct and Petitioner's Objection 2 is sustained.
 
The Regional Director's first sentence is inscrutable. It deals 
with the timing of the wage increase. Each of the Board 
cases cited in support of that sentence dealt with the same 
subject. See Stumpf Motor Co., 208 N.L.R.B. at 433 (regard-

ing raise announcements, "an employer's legal duty during 
the pendency of a representation petition 'is to proceed as he 
would have done had the union not been on the scene' ") 
(quoting Gates Rubber Co., 182 N.L.R.B. at 95); May Dep't 
Stores, 174 N.L.R.B. at 770 (during election campaign, em-
ployer "should decide the question of granting or withholding 
benefits as he would if a union were not in the picture"). But 
the often perplexing issues regarding the timing of a raise 
were not what the Regional Director was addressing. See 
Perdue Farms, Inc. v. NLRB, 144 F.3d 830, 836-37 (D.C. Cir. 
1998); id. at 839-40 (Randolph, J., dissenting). Although the 
union had interposed an objection on this ground, the Region-
al Director adjudicated only the union's second objection, 
which dealt with the alleged threat in Exhibit 1--the leaflet. 
The Regional Director's second sentence therefore makes no 
sense. Exhibit 1 could not have violated the "principle" that 
an employer should act as "if a union were not in the picture." 
There is no such principle governing employer communica-
tions during election campaigns, and we doubt that there 
could be in light of the First Amendment. See US Airways, 
Inc. v. National Mediation Bd., 177 F.3d 985 (D.C. Cir. 1999). 
In any event, the Board does not defend the ordering of a 
new election on such a ground.

 Despite the Board's discretion in regulating representation 
elections, see Timsco Inc. v. NLRB, 819 F.2d 1173, 1175-76 
(D.C. Cir. 1987), we must set aside its order in this case. To 
borrow from Chief Justice Marshall, an agency's discretion-
ary choices are not left to its "inclination, but to its judgment; 
and its judgment is to be guided by sound legal principles." 
United States v. Burr, 25 F.Cas. 30, 35 (C.C. Va. 1807) (No. 
14,692d). The Regional Director's judgment rested on no 
sound principle. His rationale was the antithesis of reasoned 
decisionmaking, and as such was arbitrary and capricious. 
See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. 
Co., 463 U.S. 29, 43 (1983). Counsel for the Board has 
offered different reasons to support the ordering of a second 
election. We express no view on their validity. We cannot 
sustain agency action on grounds other than those adopted by 

the agency in the administrative proceedings. See SEC v. 
Chenery Corp., 318 U.S. 80 (1943).

 The petition for judicial review is granted. The cross-
petition for enforcement is denied. The case is remanded to 
the Board for further proceedings.

 So ordered.