# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 01-4079

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

v.

DEUTSCHE POST GLOBAL MAIL, LTD., formerly known
as Yellowstone International Mailing, Inc., a wholly
owned subsidiary of Deutsche Post AG,

*Respondent.*

———————

Petition for Enforcement of an Order
of the National Labor Relations Board
Nos. 13-CA-39347 and13-RC-20399

———————

ARGUED SEPTEMBER 9, 2002—DECIDED JANUARY 13, 2003

———————

Before EASTERBROOK, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* This case arises out of a lesser-known November 2000 election dispute, one that requires no mention of butterfly ballots or hanging chads. In fact, respondent Deutsche Post Global Mail, Ltd., formerly Yellowstone International Mailing, Inc., doesn't dispute the results of the election, arguing instead that the election should not have been held at all. The National Labor Relations Board claims the election was valid and seeks enforcement of its order requiring Deutsche Post to recognize and bargain with the Union, put any agreement reached with

the Union into writing, and post a notice of the Board's findings at the Deutsche Post plant.

In April 1999, Deutsche Post AG acquired Yellowstone, which sorted, handled, and delivered a variety of corporate and bulk mail and other items to international destinations. In July of the following year, the Union filed a representation petition with the NLRB. At the time, 113 plant employees fit the petition's unit description.

At an August 2000 hearing before Region 13 of the NLRB, Yellowstone argued that the representation petition was premature because of impending changes to the bargaining unit. Within three months, Yellowstone planned to move from its Pratt Boulevard facility to a new Brummel Road facility that was a mile and a half away and had more than three times as much production space. Deutsche Post intended to merge Yellowstone with its other American subsidiaries, with the Brummel Road facility becoming Deutsche Post's Midwestern hub. Deutsche Post projected the Brummel Road facility would have 150-160 employees by the end of November 2000 and over 300 employees by the end of the first quarter of 2001.

Deutsche Post planned to offer employment at the new plant to all Yellowstone employees. Although some of the hub's anticipated business was expected to involve different combinations of sorting and shipping than had taken place at the Pratt Boulevard plant, the projected workforce would not need any substantially different job skills than those already possessed by the Yellowstone workforce, nor would it include any job classification not already filled at Yellowstone.

The Regional Director found the Union's petition for an election to be inappropriate given Yellowstone's planned move. The NLRB overruled the decision and ordered the election, which took place on November 15 and 16, 2000. The Union won, 58 to 29. The Board certified the Union as

the collective-bargaining representative of the Yellowstone unit on March 15, 2001, one month after Deutsche Post AG merged Yellowstone with its other American subsidiaries to form Deutsche Post Global Mail, Ltd.

The Board found that the company's refusal to bargain with the Union violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1). Deutsche Post admits it refused to recognize and bargain with the Union, but claims the certification was invalid because the timing of the election was inappropriate. Therefore, we need to determine simply whether the Board reasonably ordered the November 2000 election.

The Board's findings are conclusive if supported by "substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). Evidence is substantial when a reasonable mind might accept it as adequate to support the Board's conclusion. *Uniroyal Tech. Corp. v. NLRB*, 98 F.3d 993, 998 (7th Cir. 1996). Therefore, we accept the Board's reasonable inferences even though we might justifiably have reached a different conclusion had we looked at the matter *de novo*. *See NLRB v. P*I*E Nationwide, Inc.*, 923 F.2d 506, 513 (7th Cir. 1991).

When a company has plans to relocate or expand, an immediate election is appropriate if the present workforce constitutes a "substantial and representative complement" of the employer's reasonably foreseeable future workforce. *See Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 47 (1987). In its attempt to balance the "insurance of maximum employee participation in the selection of a bargaining agent" with "permitting employees who wish to be represented as immediate representation as possible," *Fall River Dyeing*, 482 U.S. at 48 n.15 (quoting *Clement-Blythe Cos.*, 182 NLRB 502, 502), the Board has avoided setting hard and fast rules for determining whether a substantial and representative complement exists, instead

applying a case-by-case approach. *See*, *e.g.*, *NLRB v. AAA Alternator Rebuilders, Inc.*, 980 F.2d 1395, 1399 (11th Cir. 1993); *Toto Indus.*, 323 NLRB 645, 645. Factors to be considered in determining when a bargaining unit constitutes a substantial and representative complement of employees include, among others, the size of the employee unit at the time of the hearing; the projected size of the post-expansion unit; the extent to which the projected additional jobs represent separate and distinct skills or functions; and the time expected to elapse before the planned reorganization. *See*, *e.g.*, *NLRB v. Asbury Graphite Mills, Inc.*, 832 F.2d 40, 42-43 (3d Cir. 1987).

In this case, it is not clear what proportion of the post-reorganization unit voted. The Board, taking the plant's 113 workers at the time and estimating a future workforce of 300, found the current workforce to be 38 percent of the projected one. The Board has found that proportion sufficient to constitute a substantial and representative complement where, as here, all of the ultimate types of jobs were represented. *See*, *e.g.*, *Custom Deliveries, Inc.*, 315 NLRB 1018, 1019 n.8 (1994) (noting general trend that election is appropriate if current employees are 30 percent of the projected workforce and 50 percent of the eventual job classifications are filled). Deutsche Post claims the 38 percent estimate required too much speculation and is too high.

First, relying on *Cooper International, Inc.*, 205 NLRB 1057 (1973), Deutsche Post claims the Board erred by assuming that most of the Yellowstone employees would accept job offers at the new plant. According to Deutsche Post, *Cooper* precludes speculation into the number of employees who will accept post-reorganization offers of employment until after those offers are made. As a result, Deutsche Post argues, the Board should not have ordered the election because there was no way for it to know

whether the existing workforce constituted a substantial and representative complement of the proposed workforce.

Simply put, Deutsche Post reads *Cooper* too broadly. In that case, the new plant was more than 18 miles away from the old one, few of the employees had cars, and there was no available public transportation. Because it had reason to believe that many of the workers would not move to the new plant, the Board declined to speculate as to the number of employees who would accept employment offers.

Here, as the Board noted, the "strikingly different facts" make such speculation much more reasonable. The new plant is just 1.5 miles away, and the transportation problems in *Cooper* are not present. Given that the nature of the work will not change, the company offered no reason to think that the vast majority of Yellowstone employees would not accept employment offers at the new plant. Therefore, the Board's speculation was reasonable. *See AAA Alternator Rebuilders, Inc.*, 980 F.2d at 1399 ("[Cooper] does not establish an exclusive and dispositive means for the exercise of discretion by the Board in implementing its case-by-case approach.").

Deutsche Post argues that allowing the Board discretion and some speculation will make it hard for employers to foresee whether elections are appropriate. However, that's a small cost of any balancing system. The whole point of the case-by-case analysis is to weigh the many factors unique to any given situation, and setting hard and fast rules such as the one Deutsche Post suggests takes away that freedom.

Second, Deutsche Post argues the Board erred by estimating the future workforce to be 300 workers. Yellowstone president Vic Schiegg said the new plant would have "300 plus" employees but did not offer a precise number. Deutsche Bank suggests Yellowstone's workforce likely will triple since the new plant will have over three times as much production space.

Given the lack of concrete evidence as to the ultimate number of employees, the Board reasonably estimated the future workforce to be 300. Yellowstone simply failed to provide evidence of a more accurate prediction. Moreover, even if it estimated the future workforce to be 339, as Deutsche Post suggests, the Board reasonably could have found that the current workforce constituted a substantial and representative complement of the proposed one. *See Asbury Graphite Mills*, 832 F.2d at 43 (enforcing Board order for an immediate election where vote included 13 of a projected 30 to 40 employees); *Gerlach Meat Co.*, 192 NLRB 559 (1971) (35 percent of employees performing 50 percent of job classifications constituted a substantial and representative complement of proposed workforce).

Because we find its decision to order the election to be supported by substantial evidence, the Board's petition for enforcement of its order is GRANTED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*