CANADIAN AMERICAN
OIL CO., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 95–1284.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 26, 1996.

Decided April 23, 1996.

Rehearing Denied June 14, 1996.

Order Denying Rehearing June 19, 1996.

Lisa P. Sullivan argued the cause for petitioner, with whom Kent C. Jonas was on the brief. Ronald I. Tisch, Washington, DC, entered an appearance.

Meredith L. Jason, Attorney, National Labor Relations Board, argued the cause for respondent, with whom Linda R. Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, were on the brief. Linda Dreeben, Supervisory Attorney, entered an appearance.

Before: WALD, WILLIAMS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

The unfair labor practice charge in

this appeal[1] arises out of a union election held at the Divisidero Touchless Car Wash ("Car Wash"). After Local 350 of the Sanitary Truck Drivers and Helpers, International Brotherhood of Teamsters ("the union") won the election and was certified as the exclusive bargaining representative of Car Wash's employees, Car Wash sought to have the election set aside because of alleged threats of violence by union representatives during the campaign. Prior to the hearing on these election objections, Car Wash also alleged that union officials were threatening employees with retaliation if they testified against the union. Claiming that the employees would be too afraid to testify in the face of these threats, Car Wash requested that the hearing officer close the hearing to everyone but each side's attorneys during the taking of testimony, and then bar the attorneys from revealing the identities of employee witnesses. The hearing officer rejected this proposal. When none of the employees subsequently showed up to testify at the hearing, Car Wash sought to admit their redacted statements into evidence as a substitute, but the hearing officer refused to admit the declarations. As a result, Car Wash was left with no evidence to support its objections to the election, and the hearing officer recommended that the Board rule against the employer. The National Labor Relations Board (the "Board") agreed and certified the union as the exclusive collective-bargaining representative of Car Wash's employees.

1. Although a Board's decision in a certification proceeding is not directly reviewable in the courts, an employer may challenge a certification decision indirectly by refusing to bargain with the union and then raising its election objection in the ensuing unfair labor practice proceedings. *See, e.g., Boire v. Greyhound Corp.,* 376 U.S. 473, 476–77, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964); *Amalgamated Clothing & Textile Workers v. NLRB,* 736 F.2d 1559, 1561–62 (D.C.Cir.1984).

2. Car Wash submitted the following three employee declarations alleging impermissible pre-election conduct:

   Employee A:
   (1) ... Julio [Delgado] told me that if I didn't vote for the Union, I would have to pay US $375.00 in order to continue working at the car wash. And he told me that if I voted, I didn't have to pay anything....

Car Wash seeks invalidation of this result, on the ground that the Board was obligated to accommodate threatened employees by shielding their identities from union representatives during the hearing. Although we are disturbed by the Board's inflexible response to allegations which, if true, give rise to reasonable fears of retaliation that would inhibit the employees from testifying, the Board did not abuse its discretion in denying Car Wash's specific proposals.

## I. BACKGROUND

On July 19, 1994, the union filed a petition to represent the employees of Divisidero Touchless Car Wash, an entity owned by Canadian American Oil Company. The Board conducted an election on September 7, 1994; of the 86 eligible Car Wash employees, 58 voted for the union, 21 voted against the union, and 4 ballots were challenged. Car Wash filed objections to the election, arguing that the union had unlawfully intimidated employees who voiced anti-union sentiments and promised unlawful financial rewards to pro-union workers. In support of its objections, Car Wash submitted several declarations by employees who claimed that pro-union workers threatened them with physical violence and hefty union membership fees if they did not vote for the union. One employee also stated that he was threatened with loss of his job if he did not support the union.[2] Based on these declarations, the

(2) ... I told them [Delgado and Tomas] that I didn't want the Union because it didn't give me the job, but Roy did. And later, they told me that when the Union was elected that I would be the first one to be fired. (3) And since mid August, the people who support the Union have told me that if I didn't help them I knew what could happen to me. They threatened me, not with their hands, but with other people, who could do it. ... (5) They were talking to other employees the same way they were talking to me. If they didn't vote for the Union they would have to pay US $375.00 to get in and work in the car wash.
   Employee B:
   (1) Tomas[,] Julio[,] Hector Reyes[,] Gabriel. These four (4) people told me that if I didn't sign, I would have to pay $300.00.

NLRB's Regional Director scheduled a hearing on the election objections.

Prior to the hearing, counsel for the employer wrote to the Regional Director, claiming that the employees whom Car Wash intended to call as witnesses against the union were afraid to appear. She stated:

> ... [These employees] have expressed grave fear of physical violence against them if they testify at the upcoming hearing. This fear was heightened when, at a recent union meeting, union officials said that they were anxious "to see the faces of those who are providing information against the union, so we can take care of them." One high-ranking union official said that once he saw the faces and learned the names of those who provided information against the union, he would tell others that they could "kick and break their ass" or kill them.

In this letter, Car Wash's counsel requested that the Board adopt special procedures to protect the identities of employee witnesses. Specifically, Car Wash proposed that the Board hold an "attorneys-eyes-only" hearing, excluding everyone but counsel for each party from the proceedings and prohibiting counsel from revealing the identity of employee witnesses to anyone else in the union. The Board's Regional Office Director rejected this proposal, informing Car Wash that the Board appreciated its concerns, but had no mechanism through which it could protect the identity of the witnesses.

On the hearing date, none of the employees subpoenaed by Car Wash showed up. The hearing officer asked Car Wash if it wanted the subpoenas enforced against its employees, but Car Wash declined, expressing reluctance to force its workers to identify themselves to the union representatives present at the hearing. The employer then tried to submit three declarations by employees who claimed to have been the subject of union intimidation and threats, with all information about their identities redacted.[3] The union objected, arguing that as hearsay, the affidavits were admissible only for cross-examination and could not be substituted for direct testimony of live witnesses. The hearing officer refused to admit the declarations into evidence, but reminded Car Wash that the Board's Regional Office was willing to investigate allegations that union representatives had threatened retaliation against any employees who testified at the hearing. Car Wash turned down this offer for the same reason it chose not to have the subpoenas enforced: any investigation would result in eventual disclosure of the threatened employees' identities to the union officials named as the sources of those threats.

---

> (2) Tomas and Julio told me to vote this way. They told me that they were going to watch out for me [redacted]. They were going to kick my ass.
>
> Employee C:
>
> [Redacted] threats I have received from fellow workers because I do not support the strike and because I do not agree with many of the points raised at the Union meetings. I was threatened along with fellow workers: [redacted]. One of them even told me that if he didn't vote for the Union, the other fellow workers would "take care" of him and of us. The people who made the threats were Julio Delgado and Thomas Aguilar.... [Mr. Morales] also said that there were some kiss asses and dumb suckers who had told Roy that he, Mr. Morales, had offered us money to vote against the car wash company, and that Mr. Morales had said that those people who had betrayed the Union would be taken to court where they were to loose [sic] face. And that when the other workers found out who they were, they would take care of them. I, on my part, was very stubborn. I

> was constantly told, indirectly, that I was a spy, that I have told everything to everybody. [redacted] Many workers feel the same way I do but they, maybe because of insecurity or because they are afraid of the other workers, do not [redacted]....

3. Both in its reply brief and at oral argument, counsel for Car Wash indicated that it had also submitted complete, unredacted declarations to the NLRB, although it is unclear whether those declarations were submitted to the Regional Director who ordered a hearing on the election objections, the hearing officer, or the Board itself on review of the union's unfair labor practice charge. *See* Petitioner's Reply Brief at 11 ("[T]he Board had copies of complete, unredacted declarations. The Car Wash submitted these same declarations, in unredacted form, to the Board when the Car Wash requested a hearing on its election objections. The Board concluded that the unredacted declarations were compelling enough to warrant a hearing." (emphasis omitted)).

Without live witnesses or admissible declarations, Car Wash had no case, and the hearing officer recommended that the Board overrule Car Wash's objections to the election. His report first addressed the Regional Director's decision to deny Car Wash's request for an "attorneys-eyes-only" hearing. He concluded that the Board's rules, which permit each party to have a representative of its choice at a hearing, precluded Car Wash's proposal. The hearing officer then explained why he had excluded the employee declarations, noting that settled case law and Board rules permit the use of affidavits only for impeachment of witnesses testifying on cross-examination, not as admissible evidence in lieu of oral testimony, and reasoning that even if the declarations were otherwise admissible, undisclosed evidentiary problems would have precluded their admission in redacted form. The Board accepted these recommendations and certified the union as the exclusive bargaining representative of Car Wash's employees.

Car Wash, however, refused to bargain in order to challenge the Board's resolution of its election objections. After the union filed an unfair labor practice charge against Car Wash, alleging that its refusal to bargain violated §§ 8(a)(5) and (1) of the National Labor Relations Act, the Board granted summary judgment against Car Wash. Car Wash now asks us to vacate the Board's order, claiming that the hearing officer's refusal to hold an "attorneys-eyes-only" hearing or permit the admission of the redacted employee declarations denied it a meaningful opportunity to present its election objections.

## II. CAR WASH'S TWO PROPOSALS

■ Before turning to the Board's ruling on each of Car Wash's proposals to preserve witness anonymity, we briefly set forth the applicable standard for reviewing the Board's decisions. On questions regarding representation, we accord the Board an especially "wide degree of discretion." *NLRB v. A.J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946); *see also C.J. Krehbiel Co. v. NLRB,* 844 F.2d 880, 882 (D.C.Cir.1988) (citations omitted); *Amalgamated Clothing & Textile Workers,* 736

F.2d at 1564 ("the scope of our review of the Board's decisions in cases involving certification is extremely limited") (citing *Amalgamated Clothing Workers of America v. NLRB,* 424 F.2d 818, 827 (D.C.Cir.1970)). We will affirm the Board's order to bargain unless the Board abused its discretion in overruling Car Wash's objections in the underlying election proceeding. *See C.J. Krehbiel Co.,* 844 F.2d at 881–82.

### A. *"Attorneys–Eyes–Only" Hearing*

■ Car Wash argues that the Board misinterpreted its own rules and abused its discretion by refusing to conduct an "attorneys-eyes-only" hearing. The hearing officer stated that the Board's rules, which give each party the right to have a representative of its choice present at a hearing, precluded use of the restricted type of hearing procedures requested by Car Wash. Rule 102.66(a) provides in relevant part that "[a]ny party shall have the right to appear at any hearing in person, by counsel, or by other representative." 29 C.F.R. § 102.66(a) (1995). Car Wash contends that instead of affirming the hearing officer's construction of the rule, the Board should have interpreted it as allowing the presence of *either* an attorney *or* a representative at a hearing, but not necessarily both. Had the Board adopted this construction of the Rule, it could have assented to the "attorneys-eyes-only" request.

■ The Board's interpretation of its own rule is given controlling weight, unless it is plainly erroneous or inconsistent with the regulation itself. *See Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *S.G. Loewendick & Sons, Inc. v. Reich,* 70 F.3d 1291, 1294 (D.C.Cir.1995) (quoting *Thomas Jefferson Univ. v. Shalala,* — U.S. —, —, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945))). The Board's failure to interpret its rules so as to accommodate potential witnesses in some manner—even if it did not adopt the "attorneys-eyes-only" procedure proposed by Car Wash—is troubling, since the serious allegations leveled against the union by Car Wash were never investigated.

But this decision is not such an egregious error as to require vacation of the Board's order, for several reasons.

First, the Board's decision to reject the specific procedure advanced by Car Wash was permissible. Rule 102.66(a), on which the Board relied, does not expressly bar attendance by counsel plus some other representative, and petitioner has not pointed to any statutory provision that would require the Board to restrict attendance to counsel alone. Nor is the Board's construction of the rule as barring an "attorneys-eyes-only" procedure otherwise without reason. What Car Wash asked the Board to do was to conduct a hearing on allegations of illegal threats by union members, without permitting the union's attorney to disclose the identities of adverse witnesses to those officials in the course of defending them. When asked at oral argument how the union officials could have defended against these charges if the hearing officer had used an "attorneys-eyes-only" procedure, counsel for Car Wash suggested the officials make a blanket claim that they never threatened any employees. That approach leaves much room for an erroneous decision. It might be the case, for example, that a union representative made a remark which was misunderstood by an employee, perhaps because of language barriers,[4] or one which, in context, is more accurately characterized as part of the give-and-take of a union campaign, rather than an impermissible threat of reprisal. A union official would be able to offer a credible defense along these lines only if he knew the identity of the employee witness, so that he could provide the hearing officer with additional details about the incident. Or, it might be that the employee declarations are untrue, and motivated by animosity between the employee declarants and the union officials that is unrelated to the union election. If the identity

of employee declarants is not disclosed to the union representatives accused of misconduct, their ability to provide additional information necessary to a fair decision could be significantly diminished.

Even if the Board did not abuse its discretion in construing § 102.66(a) as prohibiting an "attorneys-eyes-only" procedure, the question remains whether its failure to make some other accommodation for employee witnesses requires reversal. The Board did nothing to reassure the employees that if they testified against the union, their safety would be protected—a step that is certainly not barred by § 102.66(a) or any other Board rule or regulation that we have uncovered. For example, it might have issued a protective order prohibiting union officials from intimidating employee witnesses or restricting their contact with those employees. Or, the Board itself could have suggested an alternative hearing procedure, perhaps one which would include negotiations between the union and the company as to who would serve as the union's representatives. Yet it did none of the above. Nor did the Board explain why it did not independently investigate Car Wash's allegations of threats made against potential witnesses, or even take *in camera* testimony from those witnesses to determine if further steps were warranted.[5]

On the other hand, the Board's Regional Director did offer to investigate the allegations of witness intimidation, and indicated that the anonymity of witnesses could be maintained until the investigation was taken over by a U.S. Attorney, who presumably would have even more weapons at his disposal for protecting potential witnesses. Car Wash, however, rejected that offer, both in conversations with the Regional Director and again before the hearing officer. More importantly, Car Wash took the position that it would not accept any hearing procedures

---

4. *The employee declarations submitted by Car Wash were originally given in Spanish, and translated into English by a third party. Although this suggests that at least some of the employees speak Spanish, there is no evidence in the record as to whether the union officials accused of misconduct also speak Spanish.*

5. At oral argument, counsel for the Board justified its failure to pursue this matter because it

had only the employer's counsel's word to rely upon as evidence that the threats took place. We are unpersuaded that the sworn employee declarations regarding pre-election threats of violence, coupled with counsel's statement that post-election threats had also been made, were insufficient to warrant the Board's further investigation.

that did not guarantee witness anonymity. While it might well be an abuse of discretion for the Board to interpret its rules in a manner that fails to protect witnesses, it is reasonable for the Board to refuse to conduct its hearings without revealing the identity of witnesses to an accused party.[6] Although we would be more inclined to vacate the Board's order had Car Wash indicated its amenability to some alternative accommodation directed at the employees' safety, rather than only their continued anonymity, that was not petitioner's stance before the Board's hearing officer. Accordingly, the Board did not abuse its discretion in construing § 102.66(a) to prohibit the use of an "attorneys-eyes-only" procedure.

### B. *Redacted Employee Declarations*

■ Car Wash also contends that the Board abused its discretion by refusing to admit into evidence the declarations of Car Wash's employees with all identifying information redacted. In excluding the declarations, the hearing officer relied upon Rule 102.66(a), which provides in relevant part that "[w]itnesses shall be examined orally under oath." That construction accords with Board precedent expressing a strong preference for live oral testimony. *See, e.g., Waterbed World*, 301 N.L.R.B. No. 82 (1991) ("affidavits are not admissible in lieu of testimony unless the witness is either deceased or so seriously ill that accepting the oral testimony poses a threat to the health of the witness" (citations omitted)), *enf'd by NLRB v. Omnix Intern. Corp.*, 974 F.2d 1329 (1st

Cir.1992). The Board's interpretation is also a permissible one in light of the facts of this case, even though Car Wash was left with no admissible evidence as a result. As with its proposal for an "attorneys-eyes-only" hearing, Car Wash focused its request to admit redacted declarations on the need to keep secret the identities of witnesses who testified against the union. Reviewing the Board's rejection of this proposal, though, is an easier call than evaluating its decision on the "attorneys-eyes-only" hearing. Not only would the identities of witnesses remain undisclosed to the union officials themselves if the redacted declarations were admitted, they would be kept secret from union attorneys. Moreover, the hearing officer would be deprived of the manifold benefits that live oral testimony offers in comparison to documentary evidence. Thus, the Board did not abuse its discretion in denying this request.[7]

■ Finally, Car Wash contends that the Board's negative decisions on its two requests violated its due process rights. Petitioner has not framed its due process argument with much precision. In its brief to this court, Car Wash appears to contend that the due process clause confers the right to a meaningful hearing prior to government action, so that the Board was required to accept at least one of the two specific proposals Car Wash made to keep secret the identities of employee witnesses. *See* Petitioner's Brief at 16–20. At oral argument, however, counsel for Car Wash argued that the Board violated its right to a fair hearing

---

6. Our research suggests that only in rare cases (for example, when national security is at stake) may an agency adjudicate charges against someone without revealing the identity of the accuser. *See, e.g.,* 8 C.F.R. § 242.17(a), (c) (1995) (INS regulations authorizing immigration judge to consider nonrecord material in deportation proceedings without disclosing it to illegal alien, if disclosure would endanger national security); *see also Suciu v. INS*, 755 F.2d 127, 128 (8th Cir.1985) (rejecting due process challenge to 8 C.F.R. § 242.17(a), (c) (citing *Jay v. Boyd*, 351 U.S. 345, 357 n. 21, 360–61, 76 S.Ct. 919, 928–29, 100 L.Ed. 1242 (1956))).

7. The hearing officer also identified two other reasons for excluding the redacted employee declarations. First, the officer cited NLRB Rule 102.118(b)–(c), which permits an Administrative

Law Judge ("ALJ") to order production of witness statements for use in cross-examination. Although he appears to have interpreted the rule as providing exclusive grounds for the admission of witness statements, it seems more likely that this rule gives an ALJ authority to order the production of witness statements for use in cross-examination. Second, the hearing officer noted that "a plethora of evidentiary problems would have precluded ... admission [of the redacted declarations] into evidence," but did not detail what those problems might be. Absent further analysis by the hearing officer on this point, it is difficult to determine whether this conclusion was reasonable. In any case, Rule 102.66(a)'s preference for live oral testimony provides sufficient support for the Board's refusal to admit the declarations as evidence in redacted form.

476

by failing to come up with some alternative mechanism to protect the employees, given that it had decided not to adopt either of the two suggestions put forth by Car Wash. Whichever way we consider this objection to the Board's ruling, it does not merit reversal. In determining what procedural safeguards are required before the Board may certify the union, we must weigh the private interest affected by the official action, the risk of an erroneous deprivation under existing procedures and the probable value of additional safeguards, and the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Here, we conclude the Board was not constitutionally required to adopt procedures that concealed the identities of employee witnesses from the accused union officials. By offering to take reasonable steps to ensure the safety of witnesses, the Board could presumably fulfill any due process obligation it might have to protect Car Wash's interest in a fair adjudication of its election objections, without the increased risk of an erroneous decision that stems from witness anonymity. The Board's failure in this instance to take any steps on its own to assuage employees' fears or even to further investigate the credibility of counsel's allegations is sufficiently disturbing to make this a close case, but understandable in view of petitioner's rigid position that only a guarantee of witness anonymity would permit the hearing to move forward. In light of that stance, we can understand the Board's reluctance to prod uncooperative parties on both sides of this dispute into an investigation of Car Wash's allegations.

\* \* \*

In sum, we cannot say that the Board abused its discretion in denying the two requests of Car Wash. Accordingly, we uphold the Board's order certifying the election and ordering Car Wash to bargain, although we strongly urge the Board in the future to make more aggressive efforts to insure that threats of violence do not impugn the integrity of Board hearings by intimidating witnesses into not testifying. The petition for reversing the order of the Board is hereby denied, and the Board's order is

*Enforced.*

ORDER

June 19, 1996

PER CURIAM.

This matter is before the court on petitioner's petition for rehearing filed on June 6, 1996.

Petitioner Car Wash asks us to rehear this case, claiming that the panel did not recognize its willingness to accept some means of protecting employee witnesses other than maintaining witness anonymity. Yet Car Wash has identified only one instance prior to oral argument in which they invited the NLRB to develop such an alternative mechanism for ensuring witness safety. All of petitioner's subsequent conduct, in its correspondence with the Board and in briefs to this court, indicates that their key concern was keeping secret the identity of employee witnesses. Accordingly, the petition for rehearing is denied.