252 F.3d 445 (D.C. Cir. 2001)
 Randell Warehouse of Arizona, Inc., Petitioner
v.
National Labor Relations Board, Respondent
Sheet Metal Workers International Association, Local #359, AFL-CIO, Intervenor
 No. 00-1155
 United States Court of Appeals
 DISTRICT OF COLUMBIA CIRCUIT
 Argued February 13, 2001
Decided June 12, 2001
 
 On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board
 Michelle L. Ray argued the cause for the petitioner. Gerard Morales was on brief.
 Harold P. Coxson, Jr. was on brief for amicus curiae Council on Labor Law Equality. Michael J. Murphy entered an appearance.
 Jill A. Griffin, Attorney, National Labor Relations Board, argued the cause for the respondent. Leonard R. Page, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Charles P. Donnelly, Attorney, National Labor Relations Board, were on brief.
 Craig Becker argued the cause for intervenor Sheet Metal Workers International Association, Local #359, AFL-CIO. James B. Coppess and Patrick J. Riley entered appearances.
 Before: Henderson, Randolph and Garland, Circuit Judges.
 Opinion for the court filed by Circuit Judge Henderson.
 Karen LeCraft Henderson, Circuit Judge:
 
 
 1
 Randell Warehouse of Arizona, Inc. (Randell) petitions for review of an order of the National Labor Relations Board (NLRB or Board) directing it to bargain with the Sheet Metal Workers International Association, Local #359, AFL-CIO (Union). The NLRB cross-petitions for enforcement. For the reasons stated below, we grant the petition for review and remand to the Board for further proceedings.
 
 I.
 
 2
 The facts before us are straightforward. After the Union won a representation election, Randell filed with the Board several objections to the election. Randell contended inter alia (1) that numerous acts of intimidation created an atmosphere of coercion that reasonably tended to interfere with the free and uncoerced choice of the employees and (2) that other acts of interference by Union adherents and agents affected the result of the election. See Randell Warehouse of Ariz., Inc., 328 N.L.R.B. No. 153 app. at 19-20, 1999 WL 554239, at *30 (July 27, 1999). The Regional Director ordered a hearing to consider Randell's objections. See id. at 19, 1999 WL 554239, at *29. Following a two-day hearing, an NLRB Hearing Officer made several findings of fact and recommendations regarding the relevant issues.
 
 
 3
 As to Randell's first objection, the Hearing Officer found that a Randell employee and Union supporter, Ray Encinas, made certain objectionable comments in two employee meetings held by Randell to discuss unionization. In the first meeting, when one employee inquired what would happen to someone who crossed the picket line during a strike, Encinas commented in Spanish that " 'they would bring somebody from down below to take care of those people.' " Id. at 21, 1999 WL 554239, at *33. In a second meeting, when another employee asked what would happen to those who did not want to become union members if the Union won the election, Encinas volunteered, again in Spanish, " 'they would have the Chico Mafia take care of those people.' " Id. Furthermore, on another occasion, one employee who was wearing a "Vote No" button was told by a lead worker "there is people here that beat up people that wear that."[1] Id., 1999 WL 554239, at *34. Despite these fact findings, the Hearing Officer concluded that, when measured against the standard governing thirdparty conduct in representation elections, the three incidents did not "form the basis for setting aside the election" or create "an atmosphere of confusion of [sic] fear" that "a free and fair election could not have been held." Id. at 22, 1999 WL 554239, at *34. Accordingly, the Hearing Officer recommended that the Board overrule Randell's objections on this issue.
 
 
 4
 Regarding the second objection, the Hearing Officer found that, before the election, as Union representatives distributed Union literature in front of Randell's building, another Union representative photographed the employees as they accepted or rejected the literature. See id. Moreover, the photographer took pictures of some employees' vehicles as well. When one employee asked about the purpose of the photographs, one of the Union representatives responded "It's for the Union purpose, showing transactions that are taking place. The Union could see us handing flyers and how the Union is being run." Id., 1999 WL 554239, at *35.
 
 
 5
 The Hearing Officer concluded the Union's conduct was in violation of Pepsi-Cola Bottling Co. of Los Angeles, 289 N.L.R.B. 736 (1988) (holding that, absent explanation or justification, photographing employees while they engage in protected activity violates National Labor Relations Act (NLRA)). See id. He therefore recommended that Randell's objection based on Union photographing be sustained and a new election be held.
 
 
 6
 Randell filed exceptions to the Hearing Officer's recommendations. Of relevance here, Randell argued that threats and intimidation by Union supporters destroyed the "laboratory conditions"[2] required for a representation election. Randell supported the Hearing Officer's resolution of the photographing issue, however, arguing that a new election was warranted on that basis and emphasizing that the photographing did not take place in an atmosphere otherwise free of coercion.
 
 
 7
 The Board adopted all but one of the Hearing Officer's recommendations. It rejected the Hearing Officer's conclusion about the Pepsi-Cola Bottling violation, opting instead to overrule Pepsi-Cola Bottling. See Randell, 328 N.L.R.B. No. 153, at 3, 1999 WL 554239, at *4. In light of its decision, the Board certified the Union as the collective bargaining representative of the appropriate bargaining unit of Randell employees. See id. at 5, 1999 WL 554239, at *7.
 
 
 8
 Randell refused to bargain with the Union, prompting the Union to file an unfair labor practice charge. The NLRB General Counsel issued a complaint and Randell answered. In its answer, Randell raised two defenses: the election was tainted by an atmosphere of coercion and intimidation which prevented the employees from exercising their rights freely and the Board erroneously applied its new photographing rule retroactively. The General Counsel, on the other hand, sought summary judgment reasoning that Randell's objections could have been raised or had already been rejected in the representation proceedings. The Board agreed with the General Counsel, found Randell in violation of section 8(a)(5) and (1) of the NLRA and ordered Randell to bargain with the Union. See Randell Warehouse of Ariz., Inc., 330 N.L.R.B. No. 135, at 2, 2000 WL 345407, at *2-3 (Mar. 20, 2000). This appeal followed.
 
 II.
 
 9
 "On questions regarding representation, we accord the Board an especially 'wide degree of discretion.' NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946); see also C.J. Krehbiel Co. v. NLRB, 844 F.2d 880, 882 (D.C. Cir. 1988) (citations omitted); Amalgamated Clothing & Textile Workers, 736 F.2d 1559, 1564 (D.C. Cir. 1984) ('the scope of our review of the Board's decisions in cases involving certification is extremely limited') (citing Amalgamated Clothing Workers of America v. NLRB, 424 F.2d 818, 827 (D.C. Cir. 1970)). We will affirm the Board's order to bargain unless the Board abused its discretion in overruling [an employer's] objections in the underlying election proceeding. See C.J. Krehbiel Co., 844 F.2d at 881-82." Canadian Am. Oil Co. v. NLRB, 82 F.3d 469, 473 (D.C. Cir. 1996). Yet, "[a]lthough our review is deferential, we are not merely 'the Board's enforcement arm. It is our responsibility to examine carefully both the Board's findings and its reasoning....' " General Elec. Co. v. NLRB, 117 F.3d 627, 630 (D.C. Cir. 1997) (quoting Peoples Gas Sys., Inc. v. NLRB, 629 F.2d 35, 42 (D.C. Cir. 1980)). And, especially significant here, "the Board cannot ignore its own relevant precedent but must explain why it is not controlling." B B & L, Inc. v. NLRB, 52 F.3d 366, 369 (D.C. Cir. 1995) (per curiam) (citing Cleveland Constr. Co. v. NLRB, 44 F.3d 1010, 1016 (D.C. Cir. 1995)).
 
 
 10
 In Pepsi-Cola Bottling, the Board found objectionable a union's videotaping of employees being handed union leaflets as they left the employer's premises during a union rally. 289 N.L.R.B. 736. Because the employees received no legitimate explanation for the videotaping, the Board concluded the employees could reasonably believe the Union was contemplating some future reprisals against them and set aside the election as interfering with the employees' right to choose their representatives freely. See id.
 
 
 11
 The Board set aside a representation election in Mike Yurosek & Son, Inc. as well. 292 N.L.R.B. 1074 (1989). There a union representative took photographs of campaign activity by pro-union and anti-union employees. The representative also told an anti-union activist "We've got it on film; we know who you guys are . . . after the Union wins the election some of you may not be here." Id. Relying on Pepsi-Cola Bottling, the Board again found interference with the employees' rights under the NLRA and ordered a new election.
 
 
 12
 Here the Board, in a volte face, determined that union photographing of employees engaged in protected activities during an election campaign, without more, does not necessarily interfere with employee free choice. See Randell, 328 N.L.R.B. No. 153, at 3, 1999 WL 554239, at *4. At the same time the Board overruled Pepsi-Cola Bottling, it nonetheless declined to overrule Mike Yurosek, reasoning that photographing accompanied by threats or coercive conduct does interfere with employee free choice. See id., 1999 WL 554239, at *5. Applying its newly announced rule to the facts before it, the Board found no objectionable conduct. See id. at 5, 1999 WL 554239, at *7.
 
 
 13
 Randell argues the Board erred by failing to consider the applicability of Mike Yurosek here. We agree.[3] We have repeatedly told the Board that "silent departure from precedent" will not survive judicial scrutiny. Cleveland Constr. Co. v. NLRB, 44 F.3d 1010, 1016 (D.C. Cir. 1995); accord Gilbert v. NLRB, 56 F.3d 1438, 1445 (D.C. Cir. 1995) ("It is . . . elementary that an agency must conform to its prior decisions or explain the reason for its departure from such precedent."), cert. denied, 516 U.S. 1171 (1996). Here, the Hearing Officer found that Union supporters engaged in at least three separate instances of potentially threatening conduct. See supra at ___ _ ___. Moreover, rumors about a fourth and graver incident circulated throughout the plant. See supra note 1. In view of these factual findings, the applicability of Mike Yurosek is a critical issue the Board should have examined carefully. Yet, having announced that Mike Yurosek would continue to apply, the Board failed to explain why the threatening conduct catalogued by the Hearing Officer did not amount to objectionable conduct under that case. As we have stated before, "[w]ithout some explanation of how the Board reached its conclusion, we have no basis in the record upon which to evaluate whether the Board's application of[its] rule is rational, based on substantial evidence, and consistent with the Board's own precedents." Lima v. NLRB, 819 F.2d 300, 303 (D.C. Cir. 1987). Accordingly, we remand to the Board "for further consideration and a reasoned opinion, thereby providing a meaningful basis for judicial review under 5 U.S.C. 706(2)." Id.; see also Darr v. NLRB, 801 F.2d 1404, 1408-09 (D.C. Cir. 1986) (remanding where Board did not clearly explain basis for its decision).
 
 
 14
 For the reasons stated above, we grant Randell's petition for review and remand to the Board for further proceedings consistent with this opinion.
 
 
 15
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 At the hearing, a pro-company employee testified that, while he was wearing a "Vote No" button, two Union supporters told him to "take [it] off" unless he was "looking for trouble." Deferred Appendix (D.A.) 320. The employee also testified that, later the same day, when driving home, he was boxed in by the two Union supporters and almost driven off the road. D.A. 321-25. The Hearing Officer discredited this testimony, concluding that the two pro-Union employees "both credibly denied the account of the incident as testified to by [the pro-company employee]" and "two other credible witnesses" corroborated the pro-Union employees' account of the event. Randell, 328 N.L.R.B. No. 153 app. at 21, 1999 WL 554239, at *33. The Hearing Officer did note, however, that rumors about the incident spread throughout the plant and that a leadman told the pro-company employee to " 'be careful' " because " 'they are crazy.' " Id. at 21, 1999 WL 554239, at *33 (quoting D.A. 328).
 
 
 [2]
 General Shoe Corp., 77 N.L.R.B. 124, 127 (1948) (holding that representation election should be held in "laboratory . . . conditions as nearly ideal as possible, to determine the uninhibited desires of the employees").
 
 
 [3]
 Randell also contends the Board erred in overruling the per se rule of Pepsi-Cola Bottling and in retroactively applying the new rule to this case. Because we remand to the Board on another basis, we need not reach these objections.