Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 5, 2003　　　　Decided July 13, 2004

No. 03-1088

MAJESTIC STAR CASINO, LLC,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED STEELWORKERS OF AMERICA,
INTERVENOR

———

Consolidated with
03-1101

———

On Petition for Review and Cross–Application
for Enforcement of an Order of the
National Labor Relations Board

———

*James Baird* argued the cause for petitioner. With him on the briefs were *Joshua L. Ditelberg* and *James R. Cho*.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Eric D. Duryea*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Howard E. Perlstein*, Deputy Assistant General Counsel. *David S. Habenstreit* and *Kira D. Vol*, Attorneys, entered appearances.

*Amanda Green* argued the cause for intervenor. With her on the brief was *Richard J. Brean*.

Before: EDWARDS, SENTELLE and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Majestic Star Casino, LLC ("Majestic" and "the company") petitions this Court for review of a decision and order of the National Labor Relations Board ("NLRB" and "Board") in an unfair labor practice proceeding. Majestic contests the Board's underlying certification of the union, arguing both that the Board erred in ruling on its election objections, and further that the company was improperly denied an evidentiary hearing on some of those objections. For the reasons more fully set forth below, we deny the petition and grant the Board's cross-application for enforcement.

## I. Background

Majestic operates a casino in Gary, Indiana. In April 2002, United Steelworkers of America ("Steelworkers" and "union") sought certification from the Board as the collective-bargaining representative for the company's slot-machine technicians.

On May 21, three days before the election, the union distributed a flier to the company's bargaining unit employees. The flier was styled a "Steelworkers Guarantee." The flier stated, in part:

> We Guarantee the following to the Bargaining Unit Employees of: MAJESTIC STAR CASINO (SLOT TECHNICIANS)
>
> ● The opportunity for you to elect your own negotiating committee. . . .
>
> ● [T]hat [any approved contract will be one that] YOU and your CO–WORKERS negotiated and have VOTED by a MAJORITY to ACCEPT. . . .
>
> ● That YOU have the right to ELECT your union representative from your immediate house, who WILL REPRESENT YOU before management. . . .

On May 24—pursuant to a stipulated election agreement—the Board conducted a secret-ballot election. Thirteen employees voted for representation and eight voted against. On May 31, the company filed four objections to the election conduct.

Majestic alleged that the election should be set aside because the union, it claimed, misrepresented material facts, impermissibly promised waiver of union initiation fees, improperly offered to waive or defer union dues payments, and improperly influenced the outcome of the election.

The NLRB Regional Director ("RD") issued an eighteen-page report on the company's objections, recommending that the Board overrule all four. Majestic filed exceptions with the Board to the RD's report and recommendations.

The Board issued its unpublished Decision and Certification of Representative on August 28, 2002 (the "Decision"). The Decision adopted the report, dismissed Majestic's objections, and certified the union.

On September 17, 2002, the union requested that Majestic begin bargaining. On October 9, Majestic refused. Two months later, on December 2, the union filed a charge against Majestic with the Board. The union alleged that Majestic violated section 8(a)(5) and (1) of the National Labor Relations Act (the "Act") by its refusal to bargain. 29 U.S.C.

§ 158(a)(1) & (5). The RD issued a Complaint and Notice of Hearing based on the charge.

Majestic answered on December 27, admitting its refusal to bargain, but maintaining that for the reasons it cited in its election objections, the Board invalidly certified the union. The company argued that by ruling as it did—and by not holding an evidentiary hearing on all of Majestic's points—the NLRB "improperly applied the legal standards governing the proper conduct of a representative election."

On January 13, 2003, NLRB Counsel moved for summary judgment on the refusal-to-bargain complaint. In response, the Board directed Majestic to show cause why it should not grant the motion. Majestic responded—reasserting that the election should have been set aside for all the reasons it gave earlier—by repeating that the Board improperly certified the union.

On February 26, the Board granted the union's Motion for Summary Judgment and found that Majestic's conduct constituted an unlawful refusal to bargain in violation of section 8(a)(5) and (1) of the Act. *The Majestic Star Casino*, 338 NLRB No. 107 (February 26, 2003) (the "Decision and Order"). The Board reasoned that it had already ruled against Majestic's objections when it had certified the union, and that Majestic thus already had or could have litigated these issues then. Decision and Order at 1. Moreover, the Board continued, Majestic did not "offer to adduce at a hearing any newly discovered and previously unavailable evidence, nor [did] it allege any special circumstances that would require the Board to reexamine" its decision to certify the union. *Id.* The Board reasoned that because the factual issues relating to the election were litigated in the representation proceeding, there were no genuine issues of material fact in the unfair labor proceeding. *Id.* (citing *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 162 (1941)). The Board therefore denied Majestic an evidentiary hearing, reasoning that it would serve no purpose. *See, e.g., Alois Box Co. v. NLRB*, 216 F.3d 69, 78 (D.C. Cir. 2000) ("[b]ecause [a] company had an opportunity to litigate all relevant issues of fact ... an evidentiary

hearing would have served no purpose"). The Board thus ordered Majestic to, *inter alia*, bargain with the union upon request, to embody any agreement reached in a signed document, and to post an appropriate remedial notice at its plant in Gary, Indiana. Decision and Order at 2.

## II. Analysis

### A. *Material Misrepresentations*

The company contends that various statements contained in the "Steelworkers Guarantee" flier misrepresented material facts, and the flier's distribution thus tainted the election. The company argues that the statements constitute a material misrepresentation because the union failed to disclose that: (1) only members of the union and not all employees vote for ratification of a contract, (2) only members of the union and not all employees are allowed to elect negotiation committee members, and (3) the International Union and not the employees themselves approve or reject contract provisions. Thus, the flier failed to disclose certain limitations on the unit employees' opportunity to participate in certain internal union affairs, such as choosing their union representatives and approving any agreement reached with the company. The company argues that voting employees were swayed by the statements in the flier. In support of this assertion, the company relies on affidavits it claims show that the statements led employees to form certain beliefs before the election, and that after the election they realized those beliefs were mistaken. The company further contends that the issues concerned were important to the employees. The RD, whose findings were adopted by the Board, considered and resolved this objection with longstanding and controlling precedent.

The RD, and by adoption the Board, reviewed the allegedly misleading campaign statements under the standards set forth in *Midland National Life Insurance Company*, 263 NLRB 127 (1982). Under the *Midland* rule, the Board refrains from inquiring into the truth or falsity of the parties' campaign statements, and will not set elections aside on the

basis of misleading campaign statements. The Board will intervene and set aside an election only in "cases where a party has used forged documents which render the voters unable to recognize propaganda for what it is." *Id.* at 133.

While acknowledging the existence of the Board's precedent, the company argues that the Board erred by "blindly following *Midland*." Rather, the company argues, the Board should have adopted the United States Court of Appeals for the Sixth Circuit's exception to *Midland*. That circuit has carved out a narrow exception to *Midland* for purposes of "evaluating whether campaign literature unlawfully interfered with the employees' free choice in a representation election." *NLRB v. St. Francis Healthcare Centre*, 212 F.3d 945, 964 (6th Cir. 2000). That Court has applied the exception in cases where no forgery is involved, "but where the misrepresentation is so pervasive and the deception so artful that employees will be unable to separate truth from untruth and where their right to a free and fair choice will be affected." *Id.*

However, under section 10(e) of the National Labor Relations Act, "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). The company never argued to the RD or the Board that the Board should adopt the exception that the company now supports, nor any other exceptions to the *Midland* rule. Before the RD and the Board, the company put forward the wholly distinct argument that the Board should reject its *Midland* standard, and revert to the prior standard of *Hollywood Ceramics, Co.*, 140 NLRB 221 (1962), under which the Board did evaluate the veracity of objectionable statements. Thus, under section 10(e), this court is without jurisdiction to consider the argument which the company never made before the Board.[1]

---

[1] We are aware that the Board itself has in recent opinions expressly distinguished between misrepresentations covered by the *Midland* precedent and coercive threats. As to the latter, it has in

*B. Economic Inducements*

We likewise conclude that the Board did not err in finding that the union did not act improperly by offering to waive initiation fees or to defer collection of dues.

The company argues that the union's promise to waive initiation fees constituted objectionable conduct and amounted to an economic inducement which inhibited employees' free choice, constituted the purchase of endorsements, and painted a false portrait of employee support during the election campaign. Under judicial and Board precedent, an offer to waive initiation fees is not impermissible unless it is conditioned upon an employee's demonstration of support for the union. *See NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 274 n.4 (1973); *Deming Div., Crane Co.*, 225 N.L.R.B. 657, 659 (1976). A review of the two written statements cited by the company shows that they neither allege, nor even suggest, any conditioning of the waiver on the employees' pre-election support for the union; there is no evidence that the union's fee waiver was not available to all employees on equal terms.

The company also argues that the union's promise—contained in the "Steelworkers Guarantee" flier—to initially waive the employees' dues similarly amounted to an improper economic inducement. But there is no evidence that any company employees, at the time of the campaign, owed any dues to the union. Thus, the union's deferral of dues until the signing of a contract was not an improper conferral of economic benefits. *Cf. McCarty Processors, Inc.*, 286 N.L.R.B. 703, 703 (1987); *Loubella Extendables, Inc.*, 206 N.L.R.B. 183, 183–84 (1973).

And with respect to the union's alleged promise to fund a raise for employees, the company has tendered no evidence

fact subjected the objectionable statements to a more searching examination. *See Pearson Education, Inc.*, 336 NLRB 92 (October 31, 2001), *affirmed in Pearson Education Inc. v. NLRB*, ___ F.3d ____ (D.C. Cir. 2004). Majestic makes no claim of coercion, and in any event we are without jurisdiction under NLRA section 10(e) to examine any possible inconsistency in the Board's decision.

that the union actually made any such promise. The Board therefore did not abuse its discretion by overruling these objections without an evidentiary hearing.

*C.  Voter Intimidation*

Finally, the company argues that the union impaired the fairness of the election by the unlawful intimidation of non-union supporters. The company's evidence in support of this allegation is—in its entirety—as follows:

> [A]t the change of shifts at 4 pm [conduct occurred that was] directed at the no voters—me, Gary Metros, and Jeff Brolmsa. It happened about 3 times. It was about 2 weeks prior to the election. As the swing shift came in, there was obvious yes voters. As they came into the shop, Marty Torrez would shout: it's time to light them up fellas. The other yes voters that we were aware of (Ray ___, and Albert ___,) would start laughing.... That was it as far as that goes. (Sanchez Affidavit).

The company argues, on the basis of this scant evidence, that the Board should have set aside the election or held a hearing to determine the extent of the intimidation. We disagree.

That employee's conduct does not satisfy the standard for intimidation that applies to conduct not attributable to the union. His single cited comment was not "so aggravated as to create a general atmosphere of fear and reprisal rendering a free election impossible." *Overnite Transp. Co. v. NLRB*, 140 F.3d 259, 264 (D.C. Cir. 1998) (internal quotations and citation omitted). The Board therefore did not abuse its discretion in overruling this objection without an evidentiary hearing.

### III.  Conclusion

For the reasons set forth above, we deny the petition and affirm the Board's decision.