# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 4, 2006         Decided June 22, 2007

No. 05-1464

U-HAUL COMPANY OF NEVADA, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

INTERNATIONAL ASSOCIATION OF MACHINISTS AND
AEROSPACE WORKERS, LOCAL LODGE 845,
INTERVENOR

———

Consolidated with
06-1195

———

On Petition for Review and
Cross-Application for Enforcement
of an Order of the National Labor Relations Board

———

*George D. Adams* argued the cause for petitioner. With him
on the briefs were *Richard S. Cleary* and *William C. Vail, Jr.*

*David A. Fleischer*, Senior Attorney, National Labor
Relations Board, argued the cause for respondent. With him on

the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Meredith Jason*, Attorney.

*David A. Rosenfeld* was on the brief for intervenor International Association of Machinists and Aerospace Workers, Local Lodge 845.

Before: GINSBURG, *Chief Judge*, and HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: U-Haul Company of Nevada, Inc. petitions for review of a Decision and Order of the National Labor Relations Board directing the Company to recognize and bargain with the International Association of Machinists and Aerospace Workers Local Lodge 845, AFL-CIO. U-Haul claims (1) the General Counsel of the Board abused his discretion in refusing to consolidate this case with another case involving the same parties and, (2) because the Union upset the "laboratory conditions" necessary for a valid representation election, U-Haul's refusal to bargain with the Union did not violate the National Labor Relations Act. The Board has cross-applied for enforcement of its Order and the Union has intervened in support of the Board. We uphold the Board's Decision and Order in all respects.

## I. Background

In March 2003 the Union petitioned for a representation election at U-Haul's repair facilities in Henderson and Las Vegas, Nevada. When the election was held that May, 77 ballots were cast, 47 for the Union, 25 against the Union, and 5

that were challenged.

U-Haul filed objections to the election, arguing that the Union had:

- Promised to waive the initiation fees for employees who joined the Union before the election;

- Misrepresented the extent of its support among employees by forging signatures on a petition and making "last minute representations" to employees in the form of a document erroneously "guaranteeing" the Company could not lawfully close or threaten to close the shop if the Union won the election;

- Created the appearance that the Board favored the Union when an active Union supporter greeted the Board's agent overseeing the election like a long-lost friend; and

- Engaged in unlawful electioneering when the Union's election observer smiled at and made "thumbs-up" gestures to voters in the polling place, and when Union officials conversed with six or seven voters in a parking lot near the polling place immediately before they went in to vote.

The Company also objects that, even if no one of the foregoing activities was sufficient to upset the laboratory conditions necessary for a valid election, in the aggregate they surely were. *See Gen. Shoe Corp.*, 77 NLRB 124, 127 (1948) (holding representation elections should be held in "laboratory ... conditions as nearly ideal as possible, to determine the uninhibited desires of the employees"), *enf'd*, 192 F.2d 504 (6th Cir. 1951).

A hearing officer, after taking testimony, recommended that the Board overrule U-Haul's objections and certify the Union as the exclusive bargaining representative of the employees. U-Haul filed exceptions with the Board, which rejected them, adopted the findings and recommendations of the hearing officer, and certified the Union.

When U-Haul thereafter refused to bargain, the Union filed an unfair labor practice charge alleging the Company had violated Sections 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1), (5). The General Counsel filed a complaint, which U-Haul answered with the argument that it had no obligation to bargain because the election was invalid. The General Counsel moved for summary judgment, which U-Haul opposed on the grounds that the hearing officer was biased and this case should have been consolidated with another proceeding involving the Union, the Company, and its parent, U-Haul International, Inc.

The Board concluded the hearing officer was not biased and the General Counsel had not abused his discretion because the other proceeding against U-Haul involved separate and distinct violations. Accordingly, the Board held the Company had "engaged in unfair labor practices ... within the meaning of Section[s] 8(a)(5) and (1)" and ordered U-Haul to cease and desist from refusing to bargain and to bargain with the Union upon request.

## II. Analysis

In its petition for review, U-Haul renews its arguments that (1) the General Counsel abused his discretion by failing to consolidate this proceeding with the other unfair labor practice case against the Company, (2) the Company did not unlawfully refuse to bargain because the election was invalid for each of the

reasons epitomized above, and (3) the hearing officer was biased to the point of depriving U-Haul of due process.

We review the Board's Decision and Order for abuse of discretion. *See Canadian Am. Oil Co. v. NLRB*, 82 F.3d 469, 473 (D.C. Cir. 1996). "On questions regarding representation, we accord the Board an especially wide degree of discretion." *Id.* (internal quotation marks and citation omitted). We review the Board's factual findings for substantial evidence. *See Allegheny Ludlum Corp. v. NLRB*, 104 F.3d 1354, 1358 (D.C. Cir. 1997). We will set aside a representation election only if the petitioning party "demonstrate[s] that the conduct complained of interfered with the employees' exercise of free choice to such an extent that it materially affected the election." *C.J. Krehbiel Co. v. NLRB*, 844 F.2d 880, 882 (D.C. Cir. 1988).

A. Consolidation

U-Haul argues *in limine* that the Board should have dismissed the complaint with which the General Counsel initiated this case because he abused his discretion by "arbitrarily fail[ing] to consolidate contemporaneous charges" against the Company. The Board rejected that argument on the ground that under *Service Employees, Local 87 (Cresleigh Mgmt.)*, 324 NLRB 774 (1997), consolidation is required only in "situations where the General Counsel is attempting to twice litigate the same act or conduct as a violation of different sections of the Act, or to relitigate the same charge in different cases." The charges at issue in the two cases against U-Haul are distinct: The instant case involves U-Haul's technical refusal to bargain after the Union was certified as the bargaining representative of the employees, which the Company claims was justified by misconduct on the part of the Union. The other proceeding, in contrast, involves various alleged pre-election unfair labor practices on the part of U-Haul, for which the

General Counsel is seeking a remedial bargaining order pursuant to *NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969), on the ground that the Company irremediably destroyed the possibility of holding a valid second election. In addition, the Board pointed out that consolidation would unnecessarily delay disposition of the post-election case, *see Cresleigh Mgmt.*, 324 NLRB at 775, until the more complicated pre-election complaint is resolved.

For the reasons given by the Board, we conclude the General Counsel did not abuse his discretion in pursuing the complaints against U-Haul in separate proceedings. Accordingly, we turn to the merits of U-Haul's arguments for setting aside the election.

B. Waiver of the Union Initiation Fee

U-Haul's burden is to show that Union misconduct "interfered with the employees' exercise of free choice to such an extent that it materially affected the election," *C.J. Krehbiel Co.*, 844 F.2d at 882. To that end, the Company argues first that the Union's promise to waive initiation fees for employees who joined the Union prior to the election is "objectionable, as it creates the false impression of employee support and a sense of obligation to the Union," *see NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 277-78 (1973).

This argument rests upon the faulty premise that the Union's offer was conditioned upon the employee joining the Union prior to the election. The hearing officer specifically found the Union offered, in writing and orally at meetings, to waive the initiation fees for, as stated in a Union flyer, "all employees who join ... in a newly organized shop," not only for those who joined before the election. This put the Union's offer squarely within the category deemed permissible in *Savair*, 414

U.S. at 272 n.4; *see Majestic Star Casino, LLC v. NLRB*, 373 F.3d 1345, 1349 (D.C. Cir. 2004) ("Under judicial and Board precedent, an offer to waive initiation fees in not impermissible unless it is conditioned upon an employee's demonstration of support for the union").

Substantial evidence supports the hearing officer's finding that the waiver of fees was not conditioned upon the employee's demonstrated support for the Union. Several employees testified that one or another Union supporter told them the fee waiver was conditioned upon support for the Union. The hearing officer, however, found that none of the testimony credibly supports that claim and, although there was testimony suggesting that one employee, Don Collette, who was an enthusiastic Union supporter, made such statements to two other employees, the hearing officer found Collette's denial more credible than the conflicting testimony. The hearing officer reasoned it was "inherently implausible" that Collette was making statements to other employees that "contradicted the plethora of documents that [the] Union was using during the organizing campaign as well as what the Union officials stated at meetings."

A hearing officer's "credibility determinations may not be overturned [by the reviewing court] absent the most extraordinary circumstances such as utter disregard for sworn testimony or the acceptance of testimony which is on its fac[e] incredible." *E.N. Bisso & Son, Inc. v. NLRB*, 84 F.3d 1443, 1444-45 (D.C. Cir. 1996) (internal quotation marks and citation omitted, alteration in original). No such showing has been made here; the record supports the finding that the Union did not condition waiver of the initiation fee upon an employee's supporting the Union before the election.

C. Forged Signatures and Last Minute Representations

U-Haul next argues the Union's distribution of a petition supported by forged signatures and of a "'Guarantee' certificate misrepresenting the Union's powers, individual employees' rights, and [U-Haul's] management authority" were "calculated to misinform the employees, and were cynically timed to ensure that [U-Haul] would have no opportunity to respond." The "Guarantee" stated that, if the Union won the election, then "it [would be] illegal for the company to close or threaten to close the plant."

The Board considered this objection pursuant to both its longstanding precedent, *Midland National Life Insurance Co.*, 263 NLRB 127, 133 (1982), holding that misleading campaign statements are cause to set aside an election only if a party has used "forged documents which render the voters unable to recognize the propaganda for what it is," *id.* at 130 (internal quotation mark and citation omitted), and the exception thereto engrafted by the Sixth Circuit, which held that an election also may be set aside "where no forgery can be proved, but where the misrepresentation is so pervasive and the deception so artful that employees will be unable to separate truth from untruth." *Van Dorn Plastic Mach. Co. v. NLRB*, 736 F.2d 343, 348 (1984). The Board agreed with the hearing officer that the misrepresentations alleged in this case did not meet either standard and that the "Guarantee" — although "arguably ... an erroneous reading of Board law" — would be seen and treated by voters as "union propaganda."

U-Haul challenges the Board's decision upon the basis of the Sixth Circuit's five-factor test for whether misrepresentations interfered with employees' freedom of choice, *see NLRB v. St. Francis Healthcare Ctr.*, 212 F.3d 945, 963-64 (2000). The Board argues U-Haul may not raise this

argument here because, although the Company did object on the basis of *Van Dorn*, it did not argue the Board should apply the five factors identified in *St. Francis*, *see* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board ... shall be considered by the court, unless the failure ... be excused because of extraordinary circumstances"). U-Haul responds that whereas § 160(e) bars a new "objection," here the employer is only adducing new support for an objection that it did make before the Board.

We agree the argument is barred. *St. Francis* represents a distinct alternative to the Board's approach in *Midland* and adds additional considerations to the Sixth Circuit's own approach in *Van Dorn*. *See Majestic Star Casino*, 373 F.3d at 1349 (Subsection 160(e) bars argument first raised in court that Board should adopt factors explicated in *St. Francis*).

The Board concluded the alleged misrepresentations in the form of the "Guarantee" and the forged signatures on the Union's petition did not change the employees' understanding of the petition or of the Guarantee as "union propaganda" to be treated accordingly, and therefore they were not grounds for setting aside the election. According to the Board, the few allegedly forged signatures, which suggested more employees supported the Union than may have been the case, would not have prevented employees from recognizing that the Union was circulating the petition to garner support for its cause. As for the "Guarantee," which "plainly emanated from the Union," the Board similarly concluded employees "would see the document as union propaganda and treat it as such."

The Board's reasoning is consistent with the standard set in *Midland*. We therefore hold the Board did not abuse its discretion in concluding that the alleged Union misrepresentations in this case did not compromise employees'

freedom of choice.

D. Compromising Board Neutrality

U-Haul's next argument is that when Don Collette, "a well known Union advocate and organizer," came into the polling place to vote, his overfriendly greeting of the Board agent supervising the election "suggested to the employees that the Board was not neutral." The Board responds: "The law is that an election will be set aside," as explained by this court, "if a Board agent acts in a way to destroy confidence in the Board's election process, or [in a way that] could reasonably be interpreted as impugning the election standards," *N. of Mkt. Senior Servs., Inc. v. NLRB*, 204 F.3d 1163, 1168 (D.C. Cir. 2000) (internal quotation marks and citation omitted, alteration in original). In the cited case, the Board agent sent Union officials into the employer's facility to tell employees when to vote, which "certainly may have given the impression that the Board had ceded significant authority to the Union over the conduct of the election." *Id.* at 1169.

U-Haul does not adduce any precedent for the proposition that a union adherent's conduct can call the apparent neutrality of the Board or its agent into doubt. Nor are the facts of this case so compelling as to show the Board abused its discretion in concluding that Collette's glad-handing did not compromise the Board's appearance of neutrality.

E. Improper Electioneering

U-Haul argues that the Union's election observer violated the Board's longstanding rule against "electioneering at or near the polls," *Brinks, Inc.*, 331 NLRB 46 (2000), because he "made a practice of smiling at voters and giving a 'thumbs up' as they approached the table," which some voters acknowledged "by

pointing to their 'Union Yes' pins and smiling back." In *Brinks*, too, the union observer gave several voters a thumbs-up gesture and the Board overturned the election.

Although we do not agree with the Board's Decision insofar as it said the Union observer's gesture in this case "could not reasonably be understood to convey any particular meaning" — the gesture was obviously meant to encourage support for the Union — the Board went on reasonably to distinguish *Brinks* on the ground that in that case the union observer, who had been instructed not to speak to employees, also "explicitly instructed" several employees how to vote, *see id.* at 47. In this case there is no suggestion the Union's observer either told employees how to vote or ignored any of the Board agent's instructions. We therefore conclude the Board did not abuse its discretion in concluding the thumbs-up gestures by themselves were not a ground upon which to overturn the election.

U-Haul next contends that conversations Union officials had with six or seven voters in a nearby parking lot violated the rule in *Milchem, Inc.*, 170 NLRB 362 (1968), which prohibits "prolonged conversations between representatives of any party to the election and voters waiting to cast ballots," *id.* at 362. U-Haul also relies upon this court's decision in *Nathan Katz Realty, LLC v. NLRB*, 251 F.3d 981 (2001), in which we summarized the law as follows: "[A] party engages in objectionable conduct sufficient to set aside an election if one of its agents is continually present in a place where employees have to pass in order to vote." *Id.* at 993.

Assuming the Union officials were, as U-Haul maintains and the Board assumed for the sake of the argument, as little as 30 feet from the polling place, which was on the second floor of U-Haul's facility, nothing in the record suggests a Union agent was "continually present in a place where employees ha[d] to

pass in order to vote," *id.* On the contrary, the Board noted in its Decision that "[a]ll but a handful of eligible voters were already inside the building when the voting period began and by the time [the Union agent] arrived in the parking lot," and the subject "conversations did not take place in the polling area, the waiting area, or near the line of voters." The Board's conclusion that for these reasons the conversations "are not objectionable" is consistent with *Katz.* Therefore, the Board did not abuse its discretion in rejecting U-Haul's objection to the Union's electioneering.

## F. Cumulative Impact

U-Haul's last argument in this vein is that the Union activities to which it objects, if insufficient individually to invalidate the election, when aggregated are sufficient to do so. The hearing officer, however, held that "even if ... taken cumulatively, such conduct did not interfere with the laboratory conditions of the election." This is a defensible assessment. We have explained before that where "most or all of the [objectionable] incidents [are] in the least weighty categories, the Board appropriately will decide not to overturn the election results." *Amalgamated Clothing & Textile Workers Union v. NLRB*, 736 F.2d 1559, 1569 (D.C. Cir. 1984). In this case, none of the claimed misconduct was weighty, and we can hardly say it was an abuse of discretion for the Board to determine that a few regrettable but insignificant incidents did not require overturning an election the results of which were not close.

## G. Hearing Officer Bias

Finally, U-Haul argues the hearing officer's "bias toward [U-Haul] at the objections hearing was palpable, and that bias deprived [U-Haul] of due process." As evidence of bias, U-Haul points to the hearing officer's: (1) refusal, over U-Haul's standing objection, to admit signature exemplars of witnesses

who testified they had signed the Union petition; (2) statement that allowing expert opinion regarding the inauthenticity of disputed signatures was "against [her] better judgment"; (3) discrediting two Union witnesses whose testimony arguably supported U-Haul's case; and (4) "questioning witnesses so as to reshape their testimony" to U-Haul's disadvantage.

This claim of bias has no merit. A meritorious claim may be based either upon showing a bias or prejudice that "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case," *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966), or, less commonly, upon showing a "favorable or unfavorable predisposition ... so extreme as to display clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551 (1994). U-Haul points to nothing of the sort in the record of this case. On the contrary, U-Haul's specific complaints are but disagreements with some of the hearing officer's rulings. We therefore reject U-Haul's claim that it was denied due process.

## III. Conclusion

We conclude the General Counsel did not abuse his discretion by failing to consolidate this case with another case then pending against U-Haul, and the hearing officer did not deny U-Haul due process. On the merits, we reject each of U-Haul's arguments for setting aside the election. Therefore, U-Haul's petition for review of the Board's Decision and Order is denied, and the Board's cross-application for enforcement is granted.

*So ordered.*